UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| BARRY BAKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:14CV333 JAR |
| | ) | |
| TROY STEELE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

Before the Court is defendants' motion for partial dismissal of plaintiff's complaint. Plaintiff has filed a reply to defendants' motion, and the issues have been fully briefed. Based on the reasoning outlined below, defendants' motion for partial dismissal will be granted in part and denied in part.

**Background**

Plaintiff, a former inmate at Potosi Correctional Center ("PCC")[1], brings this action for monetary damages pursuant to 42 U.S.C. § 1983, alleging violations of his civil rights by several employees of the Missouri Department of Corrections.

Plaintiff Baker, along with four co-plaintiffs, filed the instant action on February 24, 2014, pursuant to 42 U.S.C. § 1983, against thirty-seven (37) officials at Potosi Correctional Center ("PCC") in both their individual and official capacities for alleged violations of his First and Eighth Amendment rights under the Constitution. Pursuant to Fed.R.Civ.P. 20 and *Georgeoff v. Barnes*, No. 2:09CV14 ERW, 2009 WL 1405497 (E.D.Mo. May 19, 2009), the Court struck the

---

[1] Plaintiff is currently incarcerated at Southeast Correctional Center ("SECC") in Charleston, Missouri.

1

other four co-plaintiffs from the action, allowing the case to proceed with only the lead plaintiff in the case, plaintiff Baker. In its Memorandum and Order striking the co-plaintiffs from the case, the Court instructed the Clerk of Court to open new cases for each of the four co-plaintiffs, utilizing the original complaint. The Court then reviewed plaintiff Baker's complaint pursuant to 28 U.S.C. § 1915, and dismissed plaintiff Baker's official capacity claims. Service was effectuated on defendants in their individual capacity through the Court's waiver agreement with the Missouri Department of Corrections. On May 12, 2014, defendants filed a motion to partially dismiss plaintiff's complaint. [Doc. #14].

Plaintiff Baker asserts that the correctional officers at PCC violated his rights under the First and Eighth Amendment of the Constitution. He asserts broadly that he was subjected to cruel and unusual punishment through the conditions of his confinement, and he states that he was retaliated against by defendants in violation of his First Amendment rights to redress grievances.

He asserts that in June and July 2013, he filed grievances against defendants Clifton Bandy (Correctional Officer) and Caleb Brown (Correctional Officer) for using racial slurs against him and other inmates. Plaintiff claims that in response to defendants' continued harassment, plaintiff and other inmates began refusing to respond to Bandy or Brown during count, that is, they refused to say their names or identification numbers as required by prison rules. Plaintiff asserts that as a result of the grievances filed against Officers Bandy and Brown, he and several other inmates were treated in a cruel and unusual manner and subjected to increasingly worsening unlawful conditions of confinement.

Plaintiff claims that on July 16, 2013, defendants Willie Forbes (Sergeant), Unknown Henson (Sergeant), Jason Davis (Sergeant), Unknown Coulton (Correctional Officer), Unknown Whited (Correctional Officer), Unknown Wolf (Correctional Officer), and Unknown Douglas

(Correctional Officer) removed all of plaintiff's property from his cell (initiated "strip cell status") and left him with one pair of socks, one t-shirt, one pair of underwear, and a mattress. No other items were permitted. Plaintiff asserts that at this time, defendants conducted cell searches three times daily.

Plaintiff asserts that on the following day, defendant Bryan (Functional Unit Manager) "authorized defendants" to commence searching plaintiff's cell nine times per day. He claims that these cell searches continued through July 23, 2013. Plaintiff claims that on this same date, defendants Walker (Sergeant), Bandy (Correctional Officer), and Brown (Correctional Officer) took away plaintiff's socks and t-shirt.

Plaintiff claims in a conclusory fashion that he believes that from July 16, 2013 through July 29, 2013, defendants Troy Steele (Warden), Jamie Crump (Assistant Warden), Cindy Griffith (Deputy Warden) and Gregory Dunn (Major), who are all supervisors, either knew or should have known that plaintiff was placed on "strip cell status" as a result of his violation of the prison's rules.

On the morning of July 24, 2013, defendants Coulton (Correctional Officer) and Davis (Sergeant) searched plaintiff's cell and removed his mattress, forcing him to sleep on the concrete floor, which plaintiff claims resulted in back pain. Defendants did not give plaintiff a smock or a security blanket, which plaintiff says is provided for by prison policy.

Plaintiff asserts that from July 24, 2013 through July 26, 2013, his cell was searched once per hour for a total of forty-eight hours. During those same forty-eighty hours, defendants Wayne Scroggins (Sergeant), Unknown Baker (Sergeant), Davis (Sergeant), Forbes (Sergeant), Leach (Sergeant), Unknown Henson (Sergeant), Cooke (Sergeant), Walker (Sergeant), Rich (Sergeant), Hale (Sergeant), Craddock (Correctional Officer), Unknown Thompson (Correctional Officer),

Unknown Crocker (Correctional Officer), Unknown Boyer (Correctional Officer), Unknown Stone (Correctional Officer), Unknown Davidson (Correctional Officer), Coulton (Correctional Officer), Unknown Jarvis (Correctional Officer), Whited (Correctional Officer), Unknown Wolf (Correctional Officer), Unknown Cain (Correctional Officer), Unknown Young (Correctional Officer), Unknown Jones (Correctional Officer), Unknown Bellis (Correctional Officer), Unknown Brestemeyer (Correctional Officer), Clack (Correctional Officer), Unknown Johnson (Correctional Officer), Unknown Kline (Correctional Officer), Brown (Correctional Officer), and Bandy (Correctional Officer) took turns kicking plaintiff's cell doors every fifteen minutes for forty-eight hours. Defendants also left the lights on in plaintiff's cell. Plaintiff claims that the totality of these conditions resulted in sleep deprivation.

Plaintiff claims in a conclusory fashion that defendants Troy Steele (Warden), Jamie Crump (Assistant Warden), Cindy Griffith (Deputy Warden), Gregory Dunn (Major), and Daniel Bryan (Functional Unit Manager) must have authorized the hourly searches and the kicking of his cell doors every fifteen minutes to intentionally cause sleep deprivation.

In the motion for partial dismissal, defendants contend that plaintiff has failed to state a claim upon which relief can be granted with respect to several defendants and several claims within the complaint. Defendants first argue that plaintiff Baker's claims against the supervisory defendants sound in respondeat superior and cannot state a claim under § 1983 because he has not alleged personal involvement by these defendants. Defendants further assert that plaintiff's claims related to his placement in "strip cell status" for approximately thirteen (13) days in July fails to state a claim as a matter of law under the Eighth Amendment, as do his claims for removal of his mattress from his cell. Last, defendants assert that they are entitled to qualified immunity on plaintiff's claims for "strip cell status" and "removal of his mattress."

**Legal Standard**

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the legal sufficiency of a complaint so as to eliminate claims "which are fatally flawed in their legal premises ... thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir.2001) (citing *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989)). To survive a motion to dismiss for failure to state a claim, a complaint need not contain "detailed factual allegations," but it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). As the United States Supreme Court reiterated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78, 129 S.Ct. 1937, 1949 (2009), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*.

Upon considering a motion to dismiss, a federal court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. Fed.R.Civ.P. 12(b)(6); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Davenport v. Farmers Ins. Grp.*, 378 F.3d 839, 842 (2004). The task of a court is then "to review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation." *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n. 4 (8th Cir.2010) (citing *Braden v. Wal–Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir.2009) (noting "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible")).

**Discussion**

**I.  First Amendment Claims**

As noted above, defendants have completely failed to address plaintiff's First Amendment retaliation claims in their motion to dismiss. Accordingly, those claims are not at issue at the present time.

## II. Supervisory Defendants

After reviewing plaintiff's complaint in its entirety, the Court agrees with the supervisory defendants' assertion that plaintiff's § 1983 claims that sound in respondeat superior are subject to dismissal at this time for plaintiff's failure to allege personal involvement by the supervisory defendants.

Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *see also Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (claim not cognizable under § 1983 where plaintiff fails to allege defendant was personally involved in or directly responsible for incidents that injured plaintiff); *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995) (respondeat superior theory inapplicable in § 1983 suits). In the instant action, plaintiff has not set forth any specific facts indicating that defendants Steele, Crump, Griffith or Dunn were directly involved in or personally responsible for the alleged violations of his constitutional rights. As a result, the complaint fails to state a claim upon which relief can be granted with respect to these defendants. *See also*, *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) (noting that general responsibility for supervising operations of prison is insufficient to establish personal involvement required to support liability under § 1983); *Woods v. Goord*, 1998 WL 740782, at *6 (S.D.N.Y. October 23, 1998) (receiving letters or complaints does not render prison officials personally liable under § 1983).

However, plaintiff has alleged that the following "supervisors" were actual participants in the cell searches or the kicking of his cell door in order to keep him awake: Bryan, Scroggins, Baker, Davis, Forbes, Leach, Henson, Cooke, Walker, Rich and Hale. Thus, these individuals cannot be dismissed from the lawsuit at this time.

### III. Eighth Amendment Claims

As for plaintiff's allegations with regard to the Eighth Amendment, defendants have attempted to break plaintiff's allegations into separately purported violations in order to avoid attacking his assertions of unlawful conditions of confinement as a whole. Plaintiff asserts in his response brief that defendants' behavior, taken together, forms the basis of his Eighth Amendment claims.

Plaintiff is correct. In determining whether inmates' conditions of confinement violate the Eighth Amendment, the court looks at the "totality of the circumstances" that make-up those conditions. *See Rhodes v. Chapman,* 452 U.S. 337, 363 (1981); *Hoptowit v. Ray,* 682 F.2d 1237, 1246 (9th Cir.1982), on appeal after remand, *Hoptowit v. Spellman,* 753 F.2d 779 (9th Cir.1985). "Even if no single condition of confinement would be unconstitutional in itself, 'exposure to the cumulative effect of prison conditions may subject inmates to cruel and unusual punishment.'" *Rhodes*, 452 U.S. at 363 citing *Laaman v. Helgemoe*, 437 F.Supp. 269, 322-323 (1977).

The Court finds that taking plaintiff's allegations as true, as it must at this stage of the litigation, and in looking at the circumstances of plaintiff's conditions of confinement as a whole for the thirteen-day period he was placed in isolation/Administrative Segregation, he has stated a claim under the Eighth Amendment for cruel and unusual punishment. *See, e.g., Scher v. Engelke*, 943 F.2d 921, 924 (a pattern of calculated harassment, including repeated cell and body searches, can show an Eighth Amendment violation).

7

The Court basis its decision on the following allegations contained in plaintiff's complaint. Plaintiff asserts that he was first moved to an isolation cell, on July 16, 2013, and deprived of all of his property for a day and left with only one pair of socks, one t-shirt, one pair of underwear and a mattress and made to "strip" and "cuff up" (arms and legs) each time his cell was searched that day, on at least three occasions, despite the clear lack of property contained in the cell. Plaintiff states that his socks and t-shirt were taken from him on the next day (July 17, 2014), and he and his cell was searched (after being stripped and kept cuffed and kneeling), at least nine times per day for six days. At this point, the only thing left in plaintiff's cell was his mattress and himself, along with one pair of boxers.

On July 24, 2013, plaintiff's states that his mattress was removed and he was made to sleep in a cell without a smock or a mattress for two days – until July 26, 2013. During this time, the cell searches (and strip searches) increased to once per hour, or forty-eight (48) times within two days. During this two-day period, from July 24, 2013 to July 26, 2013, plaintiff states that defendants took turns kicking plaintiff's cell doors every fifteen minutes for forty-eight (48) hours. Defendants also left the lights on in plaintiff's cell. Plaintiff claims that the totality of these conditions resulted in sleep deprivation.

Taken together, plaintiff's complaint provides enough to allege an Eighth Amendment violation for unlawful conditions of confinement. As noted above, plaintiff has also made claims of First Amendment retaliation with respect to many of these same claims. As defendants have not moved to dismiss these claims, the Court will not address the factual basis for the claims at this time.

**IV.    Qualified Immunity Analysis**

Defendants seek qualified immunity from plaintiff's Eighth Amendment claims. "Government officials who perform discretionary functions are entitled to qualified immunity unless their alleged conduct violated clearly established federal constitutional or statutory rights of which a reasonable person in their positions would have known." *Ottman v. City of Independence, Mo.,* 341 F.3d 751, 756 (8th Cir.2003). Therefore, to determine whether an official is entitled to summary judgment on the basis of qualified immunity, we review (1) whether the facts alleged, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right, and (2) whether the right was clearly established when the alleged violation occurred, such that a reasonable official would have known his actions were unlawful. *Fourte v. Faulkner Cnty., Ark.,* 746 F.3d 384, 387 (8th Cir.2014) (citing *Keil v. Triveline,* 661 F.3d 981, 985 (8th Cir.2011)). "If the answer to either question is no, then the agents are entitled to qualified immunity." *Keil*, 661 F.3d at 985.

As noted above, the Eighth Amendment claims for unlawful conditions of confinement must be looked at as a whole. The Court has taken pains to outline the facts as alleged by plaintiff in his complaint and found that when looked at in their totality, they appear to allege a constitutional violation for cruel and unusual punishment under the Eighth Amendment, as well as a claim for First Amendment retaliation.

Although the Eighth Circuit has previously determined that there was no Eighth Amendment violation for floor sleeping, or going without clothes in one's cell, *O'Leary v. Iowa State Men's Reformatory*, 79 F.3d 82, 83–84 (8th Cir.1996) (finding that several days without underwear, blankets, mattress, exercise or visitation did not violate the Eighth Amendment) and *Williams v. Delo,* 49 F.3d 442, 446 (8th Cir.1995) (finding no violation where prisoner was placed in segregation without clothes, running water, hygiene supplies, mattress, and legal mail for a

9

period of four days), this Court can find no clearly established right that would justify the increasing cumulative intrusions plaintiff was subjected to within his thirteen days of solitary confinement.

Under Eighth Circuit law, "while inmates may lose many freedoms at the prison gate, they retain at least some of their constitutional rights while confined." *Timm v. Gunter,* 917 F.2d 1093, 1099 (8th Cir.1990) (citing *Turner v. Safley,* 482 U.S. 78, 84 (1987)). Although the Court is aware that prison officials are given "wide-ranging deference" in the adoption and execution of policies and practices that, in their judgment, are necessary to preserve safety, order, and discipline in their facilities, the Supreme Court has also cautioned that Courts should not take too broad a view of what constitutes clearly established law. *Spence v. Farrier,* 807 F.2d 753, 755 (8th Cir.1986) (quoting *Bell v. Wolfish,* 441 U.S. 520, 547 (1979)).

For a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of preexisting law the unlawfulness must be apparent." *Hope v. Pelzer,* 536 U.S. 730, 739 (2002) (citation omitted) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)).

There is no doubt that retaliatory cell and body searches (when one has nothing left in one's cell to search) and intentional sleep deprivation can form the basis of both an Eighth Amendment and a First Amendment retaliation claim. *See, e.g., Scher*, 943 F.2d at 925 (retaliatory cell searches of inmate's cell ten times in nineteen days could amount to Eighth Amendment violation and guard was not entitled to qualified immunity). Such was the case law in this Circuit as early as 1991, and

an objectively reasonable official could not fail to know of it. As such, defendants are not entitled to qualified immunity on plaintiff's Eighth Amendment claims in this lawsuit.

Accordingly,

**IT IS HEREBY ORDERED** that that defendants' motion for partial dismissal of plaintiff's complaint [Doc. #14] is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that plaintiff's claims brought pursuant to 42 U.S.C. § 1983 that sound in respondeat superior against defendants Steele, Crump, Griffith and Dunn are **DISMISSED**. **IN ALL OTHER RESPECTS**, defendants' motion for partial dismissal of plaintiff's complaint is **DENIED**.

**IT IS FURTHER ORDERED** plaintiff's motion to take judicial notice of his limited experience under the law [Doc. #10] is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that plaintiff's second motion to proceed in forma pauperis [Doc. #7] is also **DENIED AS MOOT** as IFP status was granted on March 11, 2014.

A separate Order of Partial Dismissal shall be entered forthwith.

Dated this 2nd day of September, 2014.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE