# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

|                      |     |                       |
|----------------------|-----|-----------------------|
| BARRY BAKER,         | )   |                       |
|                      | )   |                       |
| Plaintiff,           | )   |                       |
|                      | )   |                       |
| v.                   | )   | No. 4:14-CV-333-JAR   |
|                      | )   |                       |
| DANIEL BRYAN, et al.,| )   |                       |
|                      | )   |                       |
| Defendants.          | )   |                       |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment on the Limited Issue of Exhaustion of Administrative Remedies (Doc. 29) and Defendants' Motion for Summary Judgment (Doc. 46). Defendants' second Motion for Summary Judgment addresses the merits of Plaintiff's case. The Motions are fully briefed and ready for disposition. For the following reasons, the Motions will be **GRANTED** and this case **DISMISSED with prejudice.**

## I. Background

Plaintiff Barry Baker, a former inmate at Potosi Correctional Center ("PCC")[1], along with four co-plaintiffs, filed the instant action on February 24, 2014, pursuant to 42 U.S.C. § 1983, against thirty-seven (37) officials at Potosi Correctional Center ("PCC") in both their individual and official capacities for alleged violations of his First and Eighth Amendment rights. Pursuant to FED. R. CIV. P. 20 and *Georgeoff v. Barnes*, No. 2:09-cv-14 ERW, 2009 WL 1405497 (E.D. Mo. May 19, 2009), the Court struck the other four co-plaintiffs from the action, allowing the case to proceed with only the lead Plaintiff in the case, Plaintiff Baker. In its Memorandum and Order striking the co-plaintiffs from the case, the Court instructed the Clerk of Court to open

---

[1] Plaintiff is currently incarcerated at Southeast Correctional Center ("SECC") in Charleston, Missouri.

new cases for each of the four co-plaintiffs, utilizing the original complaint. The Court then reviewed Plaintiff Baker's complaint pursuant to 28 U.S.C. § 1915, and dismissed Plaintiff Baker's official capacity claims. Service was effectuated on Defendants in their individual capacity through the Court's waiver agreement with the Missouri Department of Corrections. On September 2, 2014, the Court granted in part Defendants' motion to partially dismiss Plaintiff's complaint and dismissed his claims brought pursuant to 42 U.S.C. § 1983 that sound in respondeat superior against Defendants Troy Steele (Warden), Jamie Crump (Assistant Warden), Cindy Griffith (Deputy Warden) and Gregory Dunn (Major) (Doc. 18). Defendants now move for summary judgment because Plaintiff failed to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a) (Doc. 29) and also because they are entitled to judgment as a matter of law on Plaintiff's claims (Doc. 46).

## II. Summary Judgment Standard

Summary judgment is appropriate when no genuine issue of material fact exists in the case and the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The initial burden is placed on the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). If the record demonstrates that no genuine issue of fact is in dispute, the burden then shifts to the non-moving party, who must set forth affirmative evidence and specific facts showing a genuine dispute on that issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

Plaintiff's pro se status does not excuse him from responding to Defendants' motions with specific factual support for his claims to avoid summary judgment, *Beck v. Skon*, 253 F.3d 330, 333 (8th Cir. 2001), or from complying with local rules, *see Schooley v. Kennedy*, 712 F.2d 372, 373 (8th Cir. 1983). *See also Carman v. Treat*, 7 F.3d 1379, 1381 (8th Cir.1993) (failing to

allow pro se prisoner to disregard Federal Rules of Civil Procedure). *See* FED. R. CIV. P. 56(e) ("[An] adverse party may not rest upon the mere allegations or denials of ... [his] pleading, but ... [must], by affidavits or as otherwise provided in this rule, ... set forth specific facts showing that there is a genuine issue for trial."); *Anderson*, 477 U.S. at 249-52 (explaining that nonmovant must offer controverting affidavits or evidence from which a reasonable jury could return a verdict in his favor).

In determining whether summary judgment is appropriate in a particular case, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. *Benford v. Correctional Medical Services*, 2012 WL 3871948, at \*4 (E.D. Mo. Sept. 6, 2012) (citing *Celotex Corp.*, 477 U.S. at 331). The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. *Id.* (citing *Anderson*, 477 U.S. at 249). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011)).

### III. Undisputed Facts[2]

#### 1. The Alleged Incident(s)

On September 28, 2012, Plaintiff, along with three other offenders, attacked a prison guard (Docs. 47-1 at 3, 47-2 at 2, 47-4 at 7). In July 2013, Plaintiff and two of these offenders began engaging in acts of organized disobedience while housed in an administrative segregation unit (Doc. 47-2 at 1-2). This disobedience was directed at the same prison guard (Doc. 47-3 at 2). During this same period, June and July of 2013, Plaintiff filed grievances against two other prison guards, Defendants Clifton Bandy ("Bandy") and Caleb Brown ("Brown"), for using racial slurs against him and other inmates (Doc. 47-4). Thereafter, on July 16, 2013, Plaintiff and

his co-conspirators were placed under Special Security Orders (Doc. 47-3 at 2).

The Special Security Orders were implemented, "any time Baker is displaying negative behaviors such as: refusing to acknowledge staff, covering the cell lights/windows so he can't be observed in the cell, refusing to provide staff with proper information for a name and number count, or is deemed out of control" (Doc. 47-5). When any of those behaviors occurred, the following steps were to be implemented:

- Notification of the Shift Commander.
- As determined by the Shift Commander, if necessary, the use of pepper spray or Response Team should be assembled and equipped with the stun shield as outlined in policy.
- The offender's cell will be searched each shift to ensure he is possessing no dangerous contraband, unauthorized property in the ADS unit, or hoarding any items to include food items when not allowed.
- The offender will be placed on limited property. An assessment will be conducted each morning and the determination will be made what, if any, property will be returned to him.
  - Offender will get boxers, sheet and mattress only. The remaining allowed ADS property items will be returned as institutional behavior improves.

---

[2] The facts are taken from Defendants' Statements of Uncontroverted Material Facts (Doc. 30 at 3-6 & Doc. 47 at 3-12) and Plaintiff's Statement of "Controverted Material Facts" (Doc. 54). Plaintiff did not respond to Defendants' Statement of Uncontroverted Material Facts included in Defendants' first Motion for Summary Judgment. Local Rule 4.01(E) provides with respect to summary judgment motions:

A memorandum in support of a motion for summary judgment shall have attached a statement of uncontroverted material facts, set forth in a separately numbered paragraph for each fact, indicating whether each fact is established by the record, and, if so, the appropriate citations. Every memorandum in opposition shall include a statement of material facts as to which the party contends a genuine dispute exists. Those matters in dispute shall be set forth with specific references to portions of the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from movant's listing of facts. All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.

E.D. Mo. L.R. 4.01(E). As a result of Plaintiff's failure to submit any response, Plaintiff has not met the requirements of Local Rule 4.01(E), and is deemed to have admitted all facts in Defendants' Statement of Uncontroverted Facts included in Defendants' First Motion for Summary Judgment. *Turner v. Shinseki*, 2010 WL 2555114, at *2 (E.D. Mo. June 22, 2010) (citing *Deichmann v. Boeing Co.*, 36 F. Supp. 2d 1166, 1168 (E.D. Mo.1999)). However, Plaintiff's failure to respond properly to Defendants' first Motion for Summary Judgment does not mean summary judgment should be automatically granted in favor of the Defendants. Even if the facts as alleged by the Defendants are not in dispute, those facts still must establish they are entitled to judgment as a matter of law. *Cross v. MHM Corr. Servs., Inc.*, No. 4:11CV1544 TIA, 2014 WL 5385113, at *3 (E.D. Mo. Oct. 10, 2014).

To the extent that Plaintiff responded to Defendants' Statement of Uncontroverted Facts included in Defendants' second Motion for Summary Judgment, the Court has included only those facts in compliance with the local rule.

(*Id.*).

Plaintiff refused to participate in the count from July 1st to July 29th (Doc. 47-4 at 4, 9). In total, during July of 2013, Plaintiff received at least fifteen conduct violations including a violation for threatening to kill a prison official and a violation for dangerous contraband, an eyeglass lens (Docs. 47-2 at 1-2, 47-3 at 3, 47-4 at 8). Ten of these violations occurred while Plaintiff was under the Special Security Orders (Doc. 47-2). After the lens was discovered, the number of wellness checks was increased to more than one wellness check per shift during the period from July 24, 2013 until July 26, 2013 (Doc. 47-3 at 3). Specifically, on July 24, 2013, 9 wellness checks were performed; on July 25, 2013, 16 wellness checks were performed; and on July 26, 2013, 9 wellness checks were performed (Doc. 47-6 at 4-5). As of July 27, 2013, the number of wellness checks had again been reduced to one per shift (*Id.* at 6). During his time on Special Security Orders, Plaintiff had continuous access to mental health and medical treatment (Doc. 47-3 at 3). The Special Security Orders were lifted on July 29, 2015 when Plaintiff began to comply with staff directives (Doc. 47-3 at 3).

### 2. Plaintiff's Grievance

On September 16, 2013, Plaintiff filed an informal resolution request ("IRR"), grievance number PCC-13-922 (Doc. 1 at 21 & Doc. 30-2). On the portion of the IRR indicating, "Complaint-One Issue-Be Specific," Plaintiff indicated "Staff Conduct-Torture & Mistreatment of Offender" (Doc. 30-2 at 1). In support of his IRR, Plaintiff attached seven pages detailing his complaint (Doc. 30-2 at 2-8). In conclusion, Plaintiff requested the following four items:

1) Look into this issue that's bearing for an immediate investigation pursuant to DOC statute 217.405;
2) Respond to IRR, Grievance & Grievance Appeal in timely manner;
3) Nominal, Compensatory & Punitive damages to be determined by a jury;
4) Preserve and properly store all documents, memorandums, IOC's, strip cell orders, individual confinement records and all other documents prison officials will likely

attempt to rely on to justify their conduct. Also, save camera footage from B-Wing cameras from July 13, 2013, through July 29, 2013.

(Doc. 30-2 at 8). On October 4, 2013, Warden Troy Steele denied Plaintiff's IRR, finding that, "[t]he initial complaint of harassment cannot be validated due to a lack of substantial evidence" (Doc. 30-2 at 9).

Thereafter Plaintiff filed an Offender Grievance[3] (Doc. 30-3). Warden Steele again denied Plaintiff's grievance, this time noting both that the Plaintiff's complaint was "broad and vague" and that it was filed "two months after the most recent date you make reference to" (Doc. 30-3). On February 8, 2014, Plaintiff appealed the Warden's decision (Doc. 30-4). On April 7, 2014, Deputy Division Director of the Division of Adult Institutions Dwayne V. Kemper denied Plaintiff's appeal finding, "You filed 54 days after the last issued violation listed in your complaint" and "You have made allegations concerning multiple violations and issues over an extended period of time" (*Id.*).

Plaintiff filed 3 grievances on July 16, 2013 and 8 additional grievances from July 16 until September 16, 2013 (Doc. 30-5 at ¶13). "None of these 11 grievances pertain to retaliation for filing grievances, or to cruel and unusual punishment resulting from placement on limited property status or special security orders" (*Id.*).

### IV. Analysis

#### A. Exhaustion

In their Motion for Summary Judgment on the Limited Issue of Exhaustion of Administrative Remedies, Defendants argue Plaintiff failed to exhaust his administrative remedies pursuant to the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). The PLRA requires "proper exhaustion," i.e., the prisoner's grievance must be in compliance with the

---

[3] If an offender is not satisfied with the informal resolution request process, he may file an Offender Grievance. Missouri Department of Corrections-Department Manual, D5-3.2.

agency's deadlines and other procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 91 (2006). "Under

the plain language of section 1997e(a), an inmate must exhaust administrative remedies *before*

filing suit in federal court." *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003) (emphasis in

original). "If exhaustion was not completed at the time of filing, dismissal is mandatory." *Id.*

"Nonexhaustion is an affirmative defense, and defendants have the burden of raising and proving

the absence of exhaustion." *Porter v. Sturm*, 781 F.3d 448, 451 (8th Cir. 2015)

The Missouri Department of Corrections' ("MDOC") grievance policy is set out in the

Missouri Department of Corrections-Department Manual, D5-3.2 (Doc. 30-1). MDOC grievance

policy requires an inmate to file an Informal Resolution Request (IRR) within 15 calendar days

from the date of the alleged incident (*Id.*). MDOC grievance policy also requires that "each

informal resolution request and offender grievance is limited to one grievable issue and should

not be expanded to include other issues at any stage of the review process" (*Id.*). However,

"MDOC procedure does not require a prisoner to file separate IRRs for each claim against each

prison official arising out of an 'alleged incident'; a prisoner need only state 'the subject of the

complaint' in the IRR." *Taylor v. Null*, No. 4:13-CV-1065-CEJ, 2015 WL 1006093, at *2 (E.D.

Mo. Mar. 5, 2015) (quoting MDOC, D5-3.2 Offender Grievance Procedure).

Upon review of Plaintiff's IRR, the Court notes that Plaintiff supports his complaint with

allegations spanning over the course of several days and involving multiple officers. In this case,

in the light most favorable to the Plaintiff, Plaintiff's complaint could be considered an "alleged

incident" as the alleged wrongful activities arose from the same security measures. However,

although the Court finds that the Plaintiff's IRR may have properly addressed a single incident, it

remains untimely filed and therefore procedurally unsound. *King v. Iowa Dep't of Corr.*, 598

F.3d 1051, 1053 (8th Cir. 2010) (internal quotation marks omitted) ("A prisoner must complete

the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court."). The last event alleged in Plaintiff's IRR occurred on July 29, 2013 (Doc. 1 & Doc. 30-2). Thus, the deadline for Plaintiff to file an IRR was August 13, 2013 but Plaintiff did not file his grievance until September 16, 2013, more than a month past the deadline.

Nevertheless, the PLRA exhaustion requirement is satisfied when prison officials fail to raise procedural deficiencies when responding to an inmate's grievance. *Burns v. Eaton*, 752 F.3d 1136, 1141 (8th Cir. 2014). In this case it appears that prison officials initially addressed the merits of Plaintiff's grievance in the Warden's response to the IRR. However, prison officials later, and sufficiently, raised the perceived procedural deficiencies in response to Plaintiff's Offender Grievance and subsequent appeal.

Finally, to the extent that Plaintiff asserts that he should be excused from the exhaustion requirement because he was prevented from filing grievances within the applicable time period, the Court finds this assertion rebutted by the evidence on the record, specifically the declaration of Rob Savage, the Grievance Officer at Potosi Correction Center. In his affidavit Mr. Savage indicates that Plaintiff filed 3 grievances on July 16, 2013 and 8 additional grievances from July 16 until September 16, 2013 (Doc. 30-5 at ¶13). Although none of these grievances dealt with the issues that are the subject of Plaintiff's Complaint, it is clear to this Court that Plaintiff had access to the Grievance procedure during the applicable period of time.

Therefore, the Court finds that Plaintiff failed to timely exhaust his administrative remedies pursuant to the PLRA. Thus, the Court will grant Defendants' Motion for Summary Judgment on the Limited Issue of Exhaustion of Administrative Remedies (Doc. 29). Regardless, in the interest of a full judicial review, the Court will also address Defendants' Motion for

Summary Judgment (Doc. 46) and evaluate Plaintiff's claims on the merits.

**B. Eighth Amendment Claims**

Plaintiff alleges that his 8th Amendment rights were violated when he was placed on strip cell status from July 16, 2013 until July 29, 2013, when searches were performed once per hour for a total of forty-eight hours, when his mattress was removed on July 24, 2013, when Correctional Officers took turns kicking his cell door every fifteen minutes for forty-eight hours, and when Defendants left the lights on in Plaintiff's cell.

As a preliminary matter, the Court finds that the alleged violations concern prison security measures. On September 28, 2012, Plaintiff participated in the assault of a prison guard (Docs. 47-1 at 3, 47-2 at 2, 47-4 at 7). In July 2013, Plaintiff and two of the other inmates involved in the attack began engaging in acts of organized disobedience while housed in an administrative segregation unit (Doc. 47-2 at 1-2). This disobedience was directed at the same prison guard (Doc. 47-3 at 2). The incident in this matter had clearly escalated into a "disturbance . . . that indisputably poses significant risks to the safety of inmates and prison staff." *Whitley*, 475 U.S. 312, 320 (1986). As a result of these acts, on July 16, 2013, Plaintiff and his co-conspirators were placed under Special Security Orders (Doc. 47-3 at 2). Plaintiff's claims against the prison officials in this case relate to these Special Security Orders and, to the extent that Plaintiff alleges that the Defendants exceeded these measures, he fails to present any evidence in support of these allegations.[4] *Beck*, 253 F.3d at 333. Therefore, the Court will only address Plaintiff's claims as they relate to the Special Security Orders.

When a security measure is at issue, the key inquiry under the Eighth Amendment is

---

[4] The Court notes that while Plaintiff has provided the Court with an affidavit, the affidavit itself does not lay out any specific facts as required by Federal Rule of Civil Procedure 56(c)(4). Instead, in the affidavit, Plaintiff verifies that "every allegation in my complaint is accurate and true" and "every statement made in my deposition is true and correct" (Doc. 54 at 27).

"whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992). To determine whether a prison security measure comports with the malicious and sadistic standard, courts look to several factors, including: 1) the need for the application of force; 2) the relationship between the need and the amount of force that was uses; and 3) the extent of injury inflicted. *Whitley*, 475 U.S. at 321. Further, "[t]he infliction of pain in the course of a prison security measure . . . does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." *Id.* at 319.

The Court finds that the prison officials used only the amount of force necessary to "restore discipline." *Id.* at 321. The Special Security Orders were implemented after several weeks of noncompliance and then only when "Baker is displaying negative behaviors" (Doc. 47-5). During the period that the Special Security Orders were in place, Plaintiff continued to disobey staff, receiving ten (10) conduct violations between July 16, 2013 and July 29, 2013 (Doc. 47-2). The Orders were lifted when he began to comply with prison officials' directives (Doc. 47-3 at 3).

Additionally, the Special Security Orders were directly related to the nature of Plaintiff's disturbance. Considering the circumstances as more fully described above, "the deprivation of [Plaintiff's] personal property serves the legitimate penological goals of preventing injury to the inmate, injury to corrections officials, and damage to the facility." *Williams v. Delo*, 49 F.3d 442, 446 (8th Cir. 1995). Furthermore, the property limitations were assessed each morning and a determination was made, what, if any, property would be returned to Plaintiff. Likewise, the cell searches were authorized during every shift to ensure he did not possess any dangerous

contraband (Doc. 47-5). The number of cell searches was admittedly, and understandably, increased following the discovery of dangerous contraband, an eyeglass lens, in Plaintiff's cell. *Cf. Scher v. Engelke*, 943 F.2d 921, 924 (8th Cir. 1991) (finding a violation when the corrections officer had no reason to believe that the inmate had any contraband).

Finally, the Court finds that any injury sustained by Plaintiff was *de minimis*. *Hudson v. McMillian*, 503 U.S. 1, 10 (1992). During the period the Special Security Orders were in place, Plaintiff had access to medical treatment and mental health care (Docs. 47-11, 47-12). The medical records during this time indicate that Plaintiff suffered a cut on his ankle, experienced some moderate back pain, and did not experience any mental health issues (*Id.*). Plaintiff also suggests that he suffered sleep deprivation as a result of losing his mattress and the lights being on in the wing all day from July 24, 2013 until July 26, 2013. He also alleges he experienced a lack of warmth because after showers on the 16th, 18th, 21st, 23rd, and 28th days of July, 2013, he was "forced to go back to the cell soaking wet, where the cells were blowing cold air" (Doc. 54 at 8). Although sleep deprivation or lack of warmth may be the basis for a successful 1983 claim, the Court finds that the totality of the circumstances, including the relatively short duration of the alleged conduct and the general safety concerns at issue in this case, support the assertion of legitimate governmental interest. *Ferguson v. Cape Girardeau Cnty.*, 88 F.3d 647, 650 (8th Cir. 1996).

Accordingly, the Court concludes that there are not any genuine issues of material facts remaining and summary judgment is warranted against Plaintiff on his 8th Amendment claims.

### C. First Amendment Claim

Plaintiff also alleges that he was retaliated against by Defendants in violation of his First Amendment rights. Specifically, Plaintiff asserts that Defendants disciplined him in retaliation

for 1) a prior assault on a prison guard, 2) refusing to comply with count procedures, and 3) for filing grievances against Bandy and Brown. To succeed on his retaliation claim, Plaintiff must prove that he engaged in protected activity and that defendants, to retaliate for the protected activity, took adverse action against Plaintiff that would chill a person of ordinary firmness from engaging in that activity. *See Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004). Neither a prior assault nor refusing to comply with count procedures are constitutionally protected rights and therefore these claims must fail as a matter of law. To the extent Plaintiff alleges that the Special Security Orders were implemented in retaliation for his filing of several grievances against Bandy and Brown, the Court finds there to be sufficient evidence to support the underlying disciplinary violations as more thoroughly discussed above. *Orebaugh v. Caspari*, 910 F.2d 526, 528 (8th Cir. 1990).

Therefore, the Court finds that there are not any genuine issues of material fact as to Plaintiff's First Amendment claims and summary judgment is warranted against Plaintiff on these claims.

### D. Qualified Immunity

Qualified immunity shields public officials "from liability in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." *Brown v. City of Golden Valley*, 574 F.3d 491, 495 (8th Cir. 2009). To overcome a defendant's qualified immunity claim, the plaintiff must show that: "(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional right; and (2) the right was clearly established at the time of the deprivation." *Baribeau v. City of Minneapolis*, 596 F.3d 465, 474 (8th Cir. 2010) (quotations omitted). "The law is clearly established if it gives the defendant officials 'fair warning' that their conduct

violated an individual's rights when the officials acted." *Forrester v. Bass*, 397 F.3d 1047, 1054 (8th Cir. 2005) (citing *Hope v. Pelzer*, 536 U.S. 730, 739-40 (2002)); *see also Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (A right is "clearly established" if "a reasonable official would understand that what he is doing violates that right."). If a state official violates a clearly established constitutional right, he is not entitled to qualified immunity. *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982). In this case, the Court has found that that the facts, viewed in the light most favorable to the Plaintiff, do not demonstrate the deprivation of a constitutional right. Accordingly, Defendants are entitled to qualified immunity as to Plaintiff's claims.

### III. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motions for Summary Judgment (Docs. 29, 46) are **GRANTED** and Plaintiff's case is **DISMISSED with prejudice.**

An appropriate Judgment will accompany this Memorandum and Order.

Dated this 29th day of September, 2015.

 

 

**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**